**Case No. 12-71696**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**IN RE U.S. PHILIPS CORPORATION,**
a Delaware Corporation,
Petitioner

**v.**

**U.S. DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA,**

**Respondent**

**And**

**KBC BANK,**
**Real Party-In-Interest**

**PETITIONER'S REPLY TO RESPONSE TO PETITION
FOR WRIT OF MANDAMUS  PURSUANT TO 28 U.S.C. § 1651(a)**

---

(D.C.  No. CV 2: 05-cv-8953-R-PLA)

Robert W. Pitts - State Bar No. 140359
Sean A. O'Keefe - State Bar No. 122417
**LAW OFFICE OF ROBERT W. PITTS**
*A Professional Corporation*
9160 Irvine Center Drive, Suite 200
Irvine, CA 92618
Telephone: (949) 720-4125
Facsimile: (949) 720-4121
Email:  rpitts@lawrwp.com

Attorneys for Petitioner
U.S. Philips Corporation

## **TABLE OF CONTENTS**

| Section | Title | Page |
|---|---|---|
| I | Preliminary Statement | 4 |
| II | Reply To KBC Bank's Arguments | 7 |
| | A. KBC Bank's Contention That The Petition Is An Improper Substitute For An Appeal Fails | 7 |
| | B. KBC Bank's Contention That No Grounds For This "Extraordinary" Remedy Exist Ignores The Context | 9 |
| | C. KBC Bank's Contention That No "Case" Existed Under Article III Fails | 10 |
| | D. KBC Bank's Contention That Philips "Failed" To Enforce Its Rights Is Obfuscation | 14 |
| | E. KBC Bank's Contention That Philips Mischaracterized The Facts Regarding KBC Bank's Failure To Respond To Discovery Is Erroneous | 15 |
| III | Summary Of The Law On The Merits Of The Dispute | 20 |
| | A. No lien Rights Can Be Obtained Against Funds That Are Received Unlawfully And With Prior Notice Of Their Unlawful Status | 21 |
| | B. This Court Has Declined To Allow A Party That Knowingly Receives Funds Transferred In Violation of An Injunction To Retain The Same | 22 |
| | C. Allowing KBC Bank To Retain The Funds Would Be Inequitable | 23 |
| | D. The District Court's Ruling Fundamentally Undermines The Injunctive Powers of Federal Courts | 25 |
| IV | Conclusion | 26 |

1

# TABLE OF AUTHORITIES

## Cases

Acuity, a Mut. Ins. Co. v. Planters Bank, Inc., 362 F.Supp.2d 885, 890 (W.D.Ky.2005) ............................................................................................21

Adams v. Morton, 581 F.2d 1314 (9th Cir.1978), cert. denied, 440 U.S. 958 (1979)……………………………………………………………19

AK Steel Corp. v. U.S., 281 F.Supp.2d 1318 (U.S. Ct. Int. Trade 2003)...............24

Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306, 68 S. Ct. 1039, 1040 (1948)...13

Burlington Northern & Santa Fe etc. v. U.S.D.C. Montana (Kapsner), 408 F.3d 1142, 1149 (9th Cir.2005) ............................................................................17

Central National Bank v. Connecticut Mut. Life Ins. Co., 104 U.S. 54 (1881) ......21

Commodity Futures Trading Com'n v. Co Petro Marketing Group, Inc., 700 F.2d 1279 (9th Cir. 1983) .............................................................................22

Durfee v. Duke, 375 U.S. 106 (1963); ..................................................................19

Eureka Financial v. Hartford Acc. and Index., 136 F.R.D. 179, 182 (E.D.Cal.1991) ........................................................................................................17

F.T.C. v. Assail, Inc., 410 F.3d 256 (5th Cir. 2005) ..............................................22

Gemco Latinoamerica, Inc. v. Seiko Time Corp., 61 F.3d 94 (1st Cir. 1995) .........22

General Atomic Co. v. Felter, 436 U.S. 493, 497, 98 S. Ct. 1939, 1941 (1978)...7, 8

In re Bartmann, 320 B.R. 725, 741 (Bankr. N.D. Okla. 2004) ..................................6

In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 293 (1895) .........7

In re Schwartz, 954 F.2d 569 (9th Cir. 1992) ........................................................24

In re Summers, 325 U.S. 561, 566-67, 65 S. Ct. 1307, 1311 (1945).......................10

In re Waldorf, 206 B.R. 858, 863 (Bankr. E.D. Mich. 1997) .................................19

Liberty Sav. Ass'n v. Sun Bank of Jacksonville, 572 F.2d 591, 596 (7th Cir.1978)21

Miller v. Pancucci, 141 F.R.D. 292, 302 (C.D. Cal. 1992) ....................................17

2

Muskrat v. United States, 219 U.S. 346, 357, 31 S. Ct. 250, 254 (1911)......... 10, 14

Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 259, 53 S. Ct. 345, 346 (1933) ...................................................................................................................10

Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1275-76 (11th Cir. 2003)...6

S.E.C. v. Homa, 514 F.3d 661 (7th Cir. 2008) ......................................................22

S.E.C. v. Interlink Data Network of Los Angeles, Inc., 77 F.3d 1201 (9th Cir. 1996) ...................................................................................................................24

U S ex rel. Rodriquez v. Weekly Publications, 74 F. Supp. 763, 768-69 (S.D.N.Y. 1947) ...................................................................................................................19

Vendo Co. v. Lektro-Vend Corp., 434 U.S. 425, 98 S.Ct. 702 (1978) .....................7

Vic Gerard Golf Cars v. Citizens Nat'l Bank, 528 F.Supp. 237, 241 (D. Conn. 1981) ...................................................................................................................22

Vizcaino v. U.S. Dist. Court for W. Dist. of Washington, 173 F.3d 713, 720 opinion amended on denial of reh'g sub nom. In re Vizcaino, 184 F.3d 1070 (9th Cir. 1999) ............................................................................................... 7, 8, 9

The Petitioner, U.S. Philips Corporation ("Philips"), hereby submits the following *Reply* to KBC Bank's *Response* (the "Response") to Philips' *Petition for Writ of Mandamus* (the "Petition").

## I

## PRELIMINARY STATEMENT

In August of 2007, KBC Bank received $1,873,260.23 (the "Disputed Funds"), in the form of eight separate transfers, from a serial contemnor, in violation of an injunction that was designed to stop exactly this course of conduct. KBC Bank knew, *before* it received each transfer, that it was unlawful. Yet, it accepted the transfers, and remained silent. When this wrongdoing was later discovered by Philips, through the coercive power of a subpoena, KBC Bank rushed into court and sought the right to retain these "stolen funds". Although the District Court ostensibly granted the relief prayed for by KBC Bank, and erroneously held that KBC Bank's claim to the funds was superior to Philips' rights under the injunction, this Court has twice declined to sustain this ruling. This Court's unwillingness to accept the foregoing result is consistent with two hundred years of precedent upholding the following proposition: A transferee who *knowingly* receives funds from a transferor, who is barred from making the subject

4

transfers by a pending injunction, acquires no rights in the unlawfully transferred funds.[1] (See, Sec. III).

In the within Reply, Philips has addressed each of the technical arguments that KBC Bank has raised in an effort to avoid a ruling on the substantive issue of law, to wit, which party is entitled to the Disputed Funds. As the within authorities and analysis confirm, not one of KBC Bank's arguments withstand analysis. Where, as in this case, the lower court fails to comply with the mandate, mandamus is the proper remedy.

This is also a case where the legal position taken by the lower court is profoundly in error. The lower court's ruling would convey upon a financial institution the right to knowingly receive and retain unlawful transfers, and, through this retention, to not only vitiate the power of an injunction, but to effectuate the unlawful desires of the most incorrigible of contemnors.

In its two trips up the appellate ladder Philips has cited a host of authorities establishing that KBC Bank has no claim on the Disputed Funds, and further establishing that the proper relief is an order compelling the return of the funds to the registry of the Court. However, the plain wisdom in the following quote

---

[1] The two opinions issued by this Court confirm that the Court does not accept the proposition that a bank has the right to impose a "bankers lien" on funds that are unlawfully transferred to the bank, by a contemnor, in violation of an injunction, *where, as here, the bank knows, before it receives that the transfers, that they are unlawful.*

encapsulates the totality of these authorities:

> The very purpose of the Injunction was to prevent the Bartmanns from dismantling their estate in order to frustrate the legitimate rights of executing judgment creditors. **At the very least, the consequence of consciously accepting payments in the face of a court order enjoining transfers must be to return the parties to the *status quo*.** Had the transfers not been made to Mr. Modovsky, the Bartmanns' bankruptcy estate would have been augmented in the amount of the prohibited transfers. Thus, Mr. Modovsky must return to the estate all transfers made in violation of the Injunction.

In re Bartmann, 320 B.R. 725, 741 (Bankr. N.D. Okla. 2004) (emphasis added);

see also Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1275-76 (11th Cir.

2003) ("Interpreting Article 4A in a manner that would allow a beneficiary bank to

accept funds *when it knows or should know that they were fraudulently obtained,*

*would allow banks to use Article 4A as a shield for fraudulent activity. It could*

*hardly have been the intent of the drafters to enable a party to succeed in engaging*

*in fraudulent activity, so long as it complied with the provisions of Article 4A.*")

(emphasis added).

In contrast to the authorities supporting Philips' position, in the five years

during which this case has traveled up and down the appellate ladder, KBC Bank

has been unable to cite a single statute, case or treatise that stands for the

proposition that a bank can take a lien upon funds that were transferred to the bank

unlawfully, where the bank was aware of the unlawful status of the transfer before

it received the funds. None of the authorities cited in the Response alter this legal

6

deficit. Philips would respectfully submit that the time has come for a dispositive ruling determining the parties' rights to the Disputed Funds.

## II

## REPLY TO KBC BANK'S ARGUMENTS

**A.** **KBC Bank's Contention That The Petition Is An Improper Substitute For An Appeal Fails**.

In the Response, KBC Bank argues that Philips is improperly using the Petition as a substitute for appeal. In support of this contention, KBC Bank alleges that Philips should have appealed the District Court's determination that it lacked Article III jurisdiction to make a determination on the issues identified in the Second Mandate. This argument ignores controlling precedent, see Vendo Co. v. Lektro-Vend Corp., 434 U.S. 425, 98 S.Ct. 702 (1978); In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 293 (1895); General Atomic Co. v. Felter, 436 U.S. 493, 497, 98 S. Ct. 1939, 1941 (1978); Vizcaino v. U.S. Dist. Court for W. Dist. of Washington, 173 F.3d 713, 720 opinion amended on denial of reh'g sub nom. In re Vizcaino, 184 F.3d 1070 (9th Cir. 1999), and it mistakenly assumes that the District Court had the power to second-guess the jurisdictional determination underlying the issuance of the mandate.

In General Atomic Co. v. Felter, 436 U.S. 493 (1978), the Supreme Court made it crystal clear that a petition for writ of mandamus is the appropriate remedy

7

where, as in this case, a lower court fails to strictly comply with the appellate mandate:

> As was recently reaffirmed in *Vendo Co. v. Lektro-Vend Corp.*, 434 U.S. 425, 98 S.Ct. 702, 54 L.Ed.2d 659 (1978), if a lower court "mistakes or misconstrues the decree of this Court, and does not give full effect to the mandate, its action may be controlled . . . by a writ of mandamus to execute the mandate of this Court." *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). A litigant who, like GAC, has obtained judgment in this Court after a lengthy process of litigation, involving several layers of courts, should not be required to go through that entire process again to obtain execution of the judgment of this Court. In light of the prior proceedings in this matter, it is inconceivable that upon remand from this Court the Santa Fe court was free to again impede GAC's attempt to assert its arbitration claims in federal forums. Because the Santa Fe court has refused or failed to comply with the judgment of this Court, petitioner's motion for leave to file a petition for a writ of mandamus is granted.

436 U.S. at 497. This Court's ruling in <u>Vizcaino v. U.S. Dist. Court for W. Dist. of Washington</u>, 173 F.3d 713 is also directly on point:

> The justification for mandamus in such circumstances is two-fold. First, inferior courts' disregard of appellate mandates "would severely jeopardize the supervisory role of the courts of appeals within the federal judicial system." (cites omitted). Second, as a policy matter, litigants who have proceeded to judgment in higher courts "should not be required to go through that entire process again to obtain execution of the judgment."

173 F.3d at 720. Here, both of the policy reasons cited in <u>Vizcaino</u> are applicable. The lower court failed to comply with the appellate mandate – a second time, and Philips has already been up and down the appellate ladder twice. It should not be compelled to make the trip a third time, when compliance with the Second

8

Mandate will resolve the issue in contest.

**B.** **KBC Bank's Contention That No Grounds For This "Extraordinary" Remedy Exist Ignores The Context**.

KBC Bank's contention that the facts of this case fail to present the requisite "extraordinary circumstances" necessary for mandamus relief also ignores the controlling precedent cited above. In Vizcaino v. U.S. Dist. Court for W. Dist. of Washington, 173 F.3d 713, this Court confirmed that a failure to comply with the appellate mandate necessarily satisfies the "extraordinary circumstances" requirement:

> Pointing out that the issuance of a writ is discretionary, (cites omitted), Microsoft contends that this discretion should not be exercised here because mandamus is a "drastic" remedy for "extraordinary circumstances," (cites omitted), and not appropriate unless the right to it is "clear and indisputable." (cites omitted). Microsoft argues that plaintiffs cannot make that showing because the orders at issue involved class certification, a matter committed to the discretion of the district court and not now appealable. The question here, however, is whether the district court's order revising the class definition on remand conflicted with the appellate mandate. Moreover, mandamus may be appropriate even concerning traditionally discretionary matters.

Vizcaino, 173 F.3d 713, 719-20.

9

C.     **KBC Bank's Contention That No "Case" Existed**

**Under Article III Fails**.

KBC Bank's contention that the District Court was correct in ruling that no "case or controversy" existed under Article III, and hence it was not obliged to comply with the Second Mandate, fails for three reasons.

1.     A Case and Controversy Was Pending Before

The Lower Court.

A "case" arises, within the meaning of Article III of the Constitution, "[w]henever the claim of a party under the Constitution, laws, or treaties of the United States ***takes such a form that the judicial power is capable of acting upon it, then it has become a case***." Muskrat v. United States, 219 U.S. 346, 357, 31 S. Ct. 250, 254 (1911) (emphasis added). In deciding whether a particular matter or dispute rises to the level of a "case", "[t]he form of the proceeding is not significant. It is the nature and effect which is controlling." In re Summers, 325 U.S. 561, 566-67, 65 S. Ct. 1307, 1311 (1945); Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 259, 53 S. Ct. 345, 346 (1933) ("In determining whether this litigation presents a case within the appellate jurisdiction of this Court, we are concerned, not with form, but with substance"). When KBC Bank filed its motion seeking *the right to retain* the funds that it unlawfully received from the contemnors in 2008, in derogation of Philips' prior rights, and Philips opposed that

10

motion, a "case" arose under Article III. In the ruling on this motion, the lower court made the substantive, if erroneous, determination that KBC Bank's right to retain the funds was superior to Philips' rights under the injunction. The ruling in that "case" was appealed by Philips ("Philips I"), and this Court issued the First Opinion and the First Mandate.

In compliance with the First Mandate (and specific oral guidance from the first appellate panel that heard this matter), Philips filed that certain *Motion For Order To Show Cause Why KBC Bank Should Not Be Held In Contempt For Receiving And Retaining Funds In Violation Of Injunction* ("Recovery Motion"). (Petition Exhibits, Pages 138-140[2]). The relief prayed for in Recovery Motion was not limited to a ruling on the issue of contempt. The following additional prayers in the Recovery Motion sought a ruling on the substantive issue of KBC Bank's *right to retain* the Disputed Funds – the very issue that was erroneously decided by the District Court:

> 3.      Finding that all funds transferred to KBC Bank-US and KBC Bank-Singapore in violation of the Injunction were subject to a "special trust," KBC Bank-US and KBC Bank-Singapore did not acquire any interest or rights in such funds, and all such funds, plus all interest accrued thereon since the date of receipt, must, in the furtherance of equity, be transferred to the registry of the Court, **whether or not KBC Bank-US and KBC Bank-Singapore are adjudged in contempt**;

---

[2] References are to the Bates Stamp page entries on the Exhibits that appear as "Petition 000____".

11

4. Ordering KBC Bank – Singapore to pay the sum of $1,540,790.00, plus all interest accrued thereon since the date of receipt, to registry of the Court;

5. Ordering KBC Bank – US to pay the sum of $332,470.23, plus all interest accrued thereon since the date of receipt, to registry of the Court;

6. Finding that U.S. Philips is entitled to 100% of the funds disgorged by KBC Bank pursuant to the order issued on this motion and remitting the funds to U.S. Philips;

7. Ordering KBC Bank - Singapore and KBC Bank - US to pay Philips the fees and costs it has incurred enforcing the Injunction in the amount of $75,000; and

8. Such further relief as this Court deems just and proper."

(Petition Exhibits Pages 138-140) (Emphasis added).

Neither KBC Bank, nor the District Court, asserted that the Recovery Motion failed to present a justiciable "case" under Article III. To the contrary, KBC Bank actively opposed the Recovery Motion, and the lower court ruled on the same. It denied Philips' prayer for a contempt ruling, and it held that KBC Bank had the right to retain the Disputed Funds, based upon KBC Bank's purportedly superior "bankers lien" on the Disputed Funds. Notably, the lower court made the latter ruling, which is contrary to century of controlling precedent, without complying with the specific directives in the First Mandate.

Philips appealed the ruling on the Recovery Motion (the "case" under Article III) to this Court a second time ("Philips II"), and this Court affirmed the

12

lower's court's ruling on the issue of contempt, but this Court declined, a second time, to affirm the District Court's ruling on the substantive issue of who was entitled to *retain* the Disputed Funds. The latter issue was remanded to the lower court, a second time, with the same clear instructions ("Second Mandate"). Instead of complying with the Second Mandate, and resolving the issue presented in the pending "case", the lower court "second-guessed" this Court's determination regarding the existence of Article III jurisdiction, and on this basis refused to comply with the Second Mandate. This failure forced Philips to seek mandamus relief.

      4.     <u>The Lower Court's Jurisdictional Ruling Is Contrary To Both The First Mandate And The Second Mandate</u>.

This Court has twice weighed the merits of the "case" pending between Philips and KBC Bank, and in both opinions this Court has ruled that Article III jurisdiction exists. When the "case" was returned to the lower court subject to the Second Mandate, it arrived *with this Court's preexisting determination finding Article III jurisdiction*. The District Court was not at liberty to reject this determination, and on that basis, to refuse to comply with the Second Mandate. To the contrary, no matter what perspective the lower court held on the issue of jurisdiction, the lower court was bound to exactly comply with the directives in the Second Mandate. See <u>Briggs v. Pennsylvania R. Co.</u>, 334 U.S.

13

304, 306, 68 S. Ct. 1039, 1040 (1948) ("In its earliest days this Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court.").

### 5. A "Case" Clearly Exists Under Article III.

Here, a substantive claim under the laws of the United States has been pending for five years, and this claim has been, and continues to be, the subject of an active contest between Philips and KBC Bank. This Court and the District Court clearly have the power to grant relief in this case. That is all that is required to satisfy the requisites of Article III. Muskrat v. United States, 219 U.S. 346, 357 (1911) ("[w]henever the claim of a party under the Constitution, laws, or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case.").

### D. KBC Bank's Contention That Philips "Failed" To Enforce Its Rights Is Obfuscation.

In the Response, KBC Bank alleges that the Petition should be denied due to Philips' alleged failure to seek a writ of execution compelling KBC Bank to turn over the Disputed Funds. First, this predicate action was not required by the Second Mandate. The mandate directed the lower court to engage in an evidentiary hearing to resolve certain issues, and then to rule on the issue of who is entitled to the Disputed Funds. Second, writs of execution are issued *after* a judicial

14

determination is made on the merits of the underlying claim, not before. Had the lower made a ruling in Philips favor, *then* Philips would have taken this order and moved to enforce it, if KBC Bank had refused to turn over the Disputed Funds. In short, KBC Bank's argument puts the proverbial cart before the horse.

**E.** **KBC Bank's Contention That Philips Mischaracterized The Facts Regarding KBC Bank's Failure To Respond To Discovery Is Erroneous**.

In the Response, KBC Bank contends that Philips falsely represented to this Court that KBC Bank defaulted on the evidentiary issues identified in the Second Mandate. This is not true. The operative statement in the Petition is quoted below:

> In accordance with the Scheduling Order and the Local Rules, Philips submitted a forty page brief and over two hundred pages of evidence twenty-eight days prior to the scheduled May 22, 2012 evidentiary hearing date, in support of its claim to the Disputed Funds. *In contrast, KBC Bank submitted nothing*. KBC Bank's opposition to Philips' brief and evidence was due on May 1, 2012, twenty-one days prior to the May 22, 2012 hearing. *Again, KBC Bank submitted nothing*. Apparently KBC Bank was so confident that the District Court would ignore the Philips II mandate, and grant its Motion To Vacate, that it felt comfortable risking a default. However, KBC Bank's actions in this regard have consequences: KBC Bank has defaulted on all issues that were in contest under the Philips II ruling.

(See, Section IV(K) Petition). The veracity of this statement is clear from the record. At the initial status conference on the Second Mandate, the District Court issued a Scheduling Order. (See, Ex. Petition, P. 17). In this order, the lower court set a hearing on the evidentiary issues (as directed by the Second Mandate). Under

15

the Local Rules, both parties were required to file their pleadings and evidence (in support of their respective prima facie cases) twenty-eight days prior to the hearing. *KBC Bank failed to file any evidence. Further, the record confirms that KBC Bank failed to file any opposition to the brief and evidence that Philips filed in compliance with the Scheduling Order*. (See, Ex. Petition, P. 1-5). When one party fails to file any evidence, in an evidentiary contest, and fails to contest the other party's evidence, it has conceded the issue – a default.

KBC Bank's contention that it "responded" to the discovery that Philips' propounded prior to the hearing, is contrary to the facts. KBC Bank failed to produce a single document, answer a single interrogatory, or answer a single request for admission. To the extent that KBC Bank is suggesting that the following boilerplate qualifies as a "response", this argument fails:

### KBC Bank's Response To Each of Philips' Requests For Admission

"KBC Bank objects to this request for admission on the grounds that: (i) it was served in connection with a motion that has been rendered void *ab initio* by the Ninth Circuit Court of Appeals and/or withdrawn by KBC Bank; (ii) requests for admission, pursuant to Fed. R. Civ. P. 36, are not a proper method of obtaining discovery from a non-party; (iii) seeks information, or documents, that is not relevant to the evidentiary hearing scheduled for May 22,2012; and/or (iv) seeks legal conclusions that are not properly the subject of requests for admission."

### KBC Bank's Response To Each of Philips' Request For Documents

16

"KBC Bank objects to this request for production on the grounds that: (i) it was served in connection with a motion that has been rendered void *ab initio* by the Ninth Circuit Court of Appeals and/or withdrawn by KBC Bank; (ii) requests for production, pursuant to Fed. R. Civ. P. 34, are not a proper method of obtaining discovery from a non-party; and (iii) it is overly broad, unduly burdensome and/or does not specify the information sought with sufficient particularity."

### KBC Bank's Response To Each of Philips' Interrogatories

"KBC Bank objects to this interrogatory on the grounds that: (i) it was served in connection with a motion that has been rendered void *ab initio* by the Ninth Circuit Court of Appeals and/or withdrawn by the movant KBC Bank; and (ii) interrogatories, pursuant to Fed. R. Civ. P. 33, are not a proper method of obtaining discovery from a non-party."

See Burlington Northern & Santa Fe etc. v. U.S.D.C. Montana (Kapsner), 408 F.3d 1142, 1149 (9th Cir.2005) ("Whether a responding party states a general objection to an entire discovery document ... or generally asserts a privilege objection within an individual discovery response, the resulting 'blanket objection' is decidedly improper."); Eureka Financial v. Hartford Acc. and Index., 136 F.R.D. 179, 182 (E.D.Cal.1991) ("[Blanket assertions of the privileges] are 'extremely disfavored.' ... The privileges] must ordinarily be raised as to each record sought to allow the court to rule with specificity."); A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("As an initial matter, general or boilerplate objections such as "overly burdensome and harassing" are improper-especially when a party fails to submit any evidentiary declarations supporting such objections."); Miller v.

17

Pancucci, 141 F.R.D. 292, 302 (C.D. Cal. 1992) ("Objections, in such boilerplate terms as those stated by Defendants, are improper and therefore "no claim of privilege at all.").

KBC Bank's contention that it was not required to respond to the above discovery, because it was a "non-party", is untenable. Although KBC Bank is a non-party to in the underlying infringement action, *it is unquestionably a "party" for the purposes of the disputes identified in the Second Opinion and Second Mandate*. This status is compelled the by the following facts:

1. In 2008, KBC Bank filed the original motion seeking the right to retain the Disputed Funds (the "2008 Motion"). This was a general appearance;

2. KBC Bank participated in the appeal of the order granting the 2008 Motion, as a named party – the appellee;

3. KBC Bank is a named party on the face of the First Opinion - U.S. Philips Corporation v. KBC Bank, N.V., 590 F. 3d 1091 (9th Cir. 2010);

4. KBC Bank was served with, and it responded to the Recovery Motion, which is still pending before the lower court, as to the matters referenced in the Second Mandate; and

18

5.  KBC Bank is a named party in the Second Opinion, <u>U.S.
    Philips Corporation v. KBC Bank, N.V.</u>, 2012 WL 112264
    (9th Cir. 2012);and appeared at the status conference on
    February 27, 2012 *seeking to retain the Disputed Funds*.

It is well established that appearing and participating in a matter before the court makes a person a party. <u>See</u> <u>Durfee v. Duke</u>, 375 U.S. 106 (1963); <u>Adams v. Morton</u>, 581 F.2d 1314 (9th Cir.1978), <u>cert. denied</u>, 440 U.S. 958 (1979). As the court stated in <u>In re Croatan Surf Club, LLC</u>, 2011 WL 5909339 (Bankr. E.D.N.C. 2011): "A 'party' is one who has either been served or is subject to some "other authority-asserting measure stating the time within which the party served must appear and defend." <u>See also</u> <u>Port of Seattle, Wash. v. F.E.R.C.</u>, 499 F.3d 1016, 1029 (9th Cir. 2007) ("A "party" is one who has filed the complaint, is a respondent to the proceeding, or who has effectively intervened."). *Here, KBC Bank is involved as a "party" in this case because, as this Court noted in the Second Opinion, it is actively seeking to retain the Disputed Funds – funds which remain subject to the jurisdiction of this Court per the First Opinion and Second Opinion.* <u>See</u> <u>U S ex rel. Rodriquez v. Weekly Publications</u>, 74 F. Supp. 763, 768-69 (S.D.N.Y. 1947) ("The word 'party' is defined in Black's Law Dictionary, 3rd Ed. 1933, p. 1332, as follows: 'A person concerned or having or taking part in any affair, matter, transaction or proceeding, considered individually.'); <u>In re Waldorf</u>,

19

206 B.R. 858, 863 (Bankr. E.D. Mich. 1997) ("A party is one who is directly interested in the subject matter, who has a right to make a defense or to control the proceeding, and who has a right to appeal from the judgment.").

Finally, this non-party argument is a ruse. Philips served a subpoena on KBC Bank as a back-up, just in case KBC Bank asserted this "we are not a party" argument. *KBC Bank ignored this "non party" subpoena as well.*

Philips would respectfully submit that a party who (i) refuses to produce any evidence in response to legitimate discovery requests; (ii) refuses to submit any evidence in support of the position that it is purportedly asserting where, as here, the issues in contest are evidentiary, (iv) fails to file a brief in support of its position on the evidentiary issues in contest; and (v) fails to dispute the evidence submitted by the opposing party, that party has knowingly defaulted.

## III

### SUMMARY OF THE LAW ON THE MERITS OF THE DISPUTE

The legal position asserted by KBC Bank in this dispute boils down to the following assertion, which the District Court's ruling validated: After receiving a copy of an injunction that explicitly bars a serial contemnor (the KXD Defendants who were KBC Bank's customers) from making any further property transfers, a bank still retains the right to receive future contemptuous transfers from this contemnor, and through the act of receipt, to immunize those unlawful transfers

20

from recovery by the party in whose favor the injunction was granted, by asserting *a post-transfer, post-receipt* possessory lien against the unlawfully transferred property. The District Court's validation of this position was a profound error.

**A.** **No Lien Rights Can Be Obtained Against Funds That Are Received Unlawfully And With Prior Notice Of Their Unlawful Status.**

In Central National Bank v. Connecticut Mut. Life Ins. Co., 104 U.S. 54 (1881), the Supreme Court thoroughly analyzed a bank's offset rights against unlawfully transferred funds and concluded that the receiving bank has no claim:

> Evidently the bank has no better right than Dillon, unless it can obtain it through its banker's lien. Ordinarily that attaches in favor of the bank upon the securities and moneys of the customer deposited in the usual course of business, for advances which are supposed to be made upon their credit. It attaches to such securities and funds, not only against the depositor, but against the unknown equities of all others in interest, unless modified or waived by some agreement, express or implied, or by conduct inconsistent with its assertion. **But it cannot be permitted to prevail against the equity of the beneficial owner, of which the bank has notice, either actual or constructive.**

104 U.S. 71-72 (emphasis added). The holding in Central National Bank is now an accepted principle of law. See Acuity, a Mut. Ins. Co. v. Planters Bank, Inc., 362 F.Supp.2d 885, 890 (W.D.Ky.2005) ("A bank may not apply a deposit, consisting of trust funds or funds belonging to one other than the depositor, to the individual indebtedness of the depositor if "it knows, or can properly be charged with knowledge of, the trust character or true ownership of the funds."); Liberty Sav. Ass'n v. Sun Bank of Jacksonville, 572 F.2d 591, 596 (7th Cir.1978) ("A second

21

reason a setoff theory will not be viable, even if there was a matured debt, is that a bank's rights to apply a deposit to a depositor's debt are limited once it has received notice of a third party's interest in the funds on deposit."); Vic Gerard Golf Cars v. Citizens Nat'l Bank, 528 F.Supp. 237, 241 (D. Conn. 1981) (no setoff against funds in depositor's account destined for payment to depositor's creditors where bank had intimate knowledge of third-party creditor interest in funds); see also, 8 A.L.R. 3d 235 (collecting cases on the issue); Amjur Bank § 887 (collecting cases on the issue).

**B. This Court Has Declined To Allow A Party That Knowingly Receives Funds Transferred In Violation of An Injunction To Retain The Same.**

This Court, along with every other court that has encountered this fact pattern, has declined to allow a bank to retain the unlawfully transferred funds. See Commodity Futures Trading Com'n v. Co Petro Marketing Group, Inc., 700 F.2d 1279 (9th Cir. 1983); F.T.C. v. Assail, Inc., 410 F.3d 256 (5th Cir. 2005); Gemco Latinoamerica, Inc. v. Seiko Time Corp., 61 F.3d 94 (1st Cir. 1995); S.E.C. v. Homa, 514 F.3d 661 (7th Cir. 2008).

This Court's ruling in the Commodity Futures case is directly on point. In Commodity Futures, an attorney received a transfer of funds in violation of an asset freeze order, just like KBC Bank. The issue presented was whether the

22

attorney should be allowed to retain the unlawful transfers. This Court answered this question in the negative:

> Appellant admits that it was informed on May 7 that the district court's decision was adverse to Co Petro and that a receiver had been appointed. Appellant was aware that the CFTC had sought an injunction against any transfer of Co Petro assets. As an officer of the court, appellant was under a duty to inquire as to the exact terms of the district court's decision before depositing the check. Consequently, we agree with the district court that Loo, Merideth & McMillan violated the permanent injunction against transfer of Co Petro assets when it deposited the check.

700 F. 2d at 1285.

Here, the issue is the same, but the facts are far more egregious. KBC Bank received *eight transfers* in knowing violation of the injunction, over a period of approximately thirty days. It did not return the funds. It did not disclose the receipt of the funds, and it did not offer to return the funds to the court that issued the injunction. To the contrary, KBC Bank facilitated and effectuated these transfers, accomplishing the mutual objective sought by both the wrongdoers and by the bank itself – the circumvention of a lawful injunction.

## C. **The District Court's Ruling Fundamentally Undermines The Injunctive Powers of Federal Courts.**

The District Court's ruling ignores the fact that the injunctive "system" has two levels of protections. The first level assumes that a party subject to an injunction will comply, given the threat of the contempt sanction. However, a

23

second level of protection exists.  In those instances where a party, as here, willfully and repeatedly makes cash transfers to another party who is on notice of the unlawful nature of the transfers, the transfers are void.  The transferee takes nothing and the funds are deemed held in trust. See generally AK Steel Corp. v. U.S., 281 F.Supp.2d 1318 (U.S. Ct. Int. Trade 2003) (Where entries were liquidated through illegal act of Customs, in violation of preliminary injunction to prevent liquidation from occurring pending resolution of challenge to antidumping duty rate, liquidations were null and void *ab initio*, and doctrine of finality did not attach so as to require filing of protest within 90 days to preserve right to judicial review.); In re Schwartz, 954 F.2d 569 (9th Cir. 1992) ( Holding that actions taken in violation of automatic stay injunction are void); S.E.C. v. Interlink Data Network of Los Angeles, Inc., 77 F.3d 1201 (9th Cir. 1996) (Holding that counsel's use of client funds in his possession to pay bill contempt, where clients assets were subject to asset freeze).

The District Court's ruling eliminated the second level of protection afforded to Philips by the injunction, without cause, and in violation of existing precedent. Worse, it allows both the KXD Defendants and their principal, and KBC Bank, to profit through contemptuous behavior. This position is legally unsustainable and morally repugnant.

24

**D. Allowing KBC Bank To Retain The Funds Would Be Inequitable.**

KBC Bank does not come to this Court with clean hands. KBC Bank did not receive just one unlawful transfer of funds from the KXD Defendants, with prior knowledge of its unlawful status – it received eight. After the first transfer, at a minimum, KBC Bank had a choice, as the first panel that heard this matter noted. It could have stopped the transfers, or returned the funds. (See Ex. Petition, P. 331). At a minimum the bank could have picked up the phone, after it received the first transfer, and advised either the lower court, or Philips, that it was receiving transfers in violation of the injunction. The bank failed to take any of these actions, because in this case silence was literally golden. To quote the comment made on the record in the prior appeal:

> COURT: But to transfer, to accept the deposit, is to allow the transfer to occur. … **You wanted to take the deposit so that you could apply your lien to it, right? So, and you knew you were going to do that, or should have known that, and so you said, Hooray we've got wires showing they are being deposited, let's let it be deposited so we can put our lien on it, but at the time you did that you were under either TRO or preliminary injunction saying 'do not allow transfers of funds of this corporation' and you did allow the transfer because you did allow the deposit**.

(See Ex. Petition, P. 331) (emphasis added).

Although KBC Bank alleges that it "sequestered" the unlawfully received funds, this purported act merely confirmed that KBC Bank knew that it was receiving, and continuing to receive, the equivalent of stolen funds. Without the

25

disclosure of this wrong, sequestration was a meaningless act. The recipient of a stolen painting could similarly argue the recipient "sequestered" the painting in a private vault pending the day when the transfer was discovered, and therefore the recipient's silence is acceptable.

In this case, KBC Bank only disclosed its receipt of the unlawful transfers after it received a subpoena from Philips compelling this disclosure, and it was only then, months after this receipt, that it asked the District Court to "bless" its retention of the unlawful transfers. On these facts, KBC Bank cannot assert any claim to equitable relief from the overwhelming body of case law cited above. To the contrary, the funds should be returned to the Court, and distributed in accordance with the parties' claims, pro rata.

## IV

## <u>CONCLUSION</u>

This matter has traveled up and down the appellate ladder twice due to the lower court's failure to comply with the appellate mandate. Philips should not have to make the trip a third time. The Petitioner would respectfully pray that this Court either: (i) grant complete relief on the matters raised in <u>Philips II</u>; or (ii) reinstate

26

the Second Mandate, and reassign the case to another District Court judge under conditions that restore the matter to the exact same procedural posture that existed before the Motion To Vacate was granted.

DATED: October 3, 2012       **LAW OFFICE OF ROBERT W. PITTS**
*A Professional Corporation*

/s/ Sean A. O'Keefe

By: _____

Sean A. O'Keefe,
Robert W. Pitts, Esq.
Attorneys for U.S. Philips
Corporation, Petitioner

27

## CERTIFICATE OF COMPLIANCE FOR CASE NUMBER 12-71696
### (Fed.R.App. 32(a)(7)(C) and Circuit Rule 32-1)

I, Sean A. O'Keefe, certify that:

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening/answering/reply/cross-appeal brief is proportionately spaced, has a typeface of 14 points or more and contains 6,924 words, including the table of contents and authorities (reply briefs must not exceed 7,000 words),

DATED: October 3, 2012      **LAW OFFICE OF ROBERT W. PITTS**
**A Professional Corporation**

/s/ Sean A. O'Keefe

By: _____

Sean A. O'Keefe, Esq.
Robert W. Pitts, Esq.
Attorneys for Petitioner,
U.S. Philips Corporation

28

## CERTIFICATE OF SERVICE

I, Sean A. OKeefe, am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 660 Newport Center Drive, Suite 400, Newport Beach, California 92660.

On October 3, 2012, I served a copy of document described as **PETITIONER'S REPLY TO RESPONSE TO PETITION FOR WRIT OF MANDAMUS PURSUANT TO 28 U.S.C. § 1651(a)** on the interested parties in this action listed below,

Amir Shlesinger                                  James M. Andriola
REED SMITH LLP                                   REED SMITH LLP
355 South Grand Avenue, Suite 2900               599 Lexington Avenue, 22ND Floor
Los Angeles, CA 90071-1514                       New York, New York 10022

by First Class Mail, by placing true copies thereof enclosed in sealed envelopes properly addressed and stamped, and delivering the same to the mail service that regularly picks up the mail from this office. This service deposits the mail with the United States Post Office in the ordinary course each day. The above document was also served on this date, via email, at the email addresses listed on the attachment hereto.

Executed under the penalty of perjury under the laws of the United States of America, on **October 3, 2012**, at Newport Beach, California.

/s/ Sean A. O'Keefe
_____
Sean A. OKeefe

29